IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JAMIE L. W., | CV 17-122-M-DLC-JCL |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433,1381-1383. Plaintiff alleges disability since May 5, 2010. Plaintiff's claim was denied initially and on reconsideration, and she requested an administrative hearing. On April 19, 2017, the Administrative Law Judge (ALJ) issued a decision finding Plaintiff not disabled within the meaning of the Act. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the agency's final decision for

purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Plaintiff was 34 years old at the time of her alleged onset date and 41 years old at the time of the ALJ's decision.

## I.   <u>Standard of Review</u>

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record*." Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193

(citing *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court

"may not substitute its judgment for that of the Commissioner." *Widmark*, 454

F.3d at 1070 (quoting *Edlund*, 253 F.3d at 1156).

## II.   **Burden of Proof**

To establish disability, a claimant bears "the burden of proving an 'inability

to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which...has lasted or can be expected

to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at

1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a

five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. The

claimant bears the burden of establishing disability at steps one through four of this

process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the

ALJ considers whether the claimant is engaged in substantial gainful activity. 20

C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). At step two, the ALJ must

determine whether the claimant has any impairments that qualify as severe under

the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ

finds that the claimant does have one or more severe impairments, the ALJ will

compare those impairments to the impairments listed in the regulations. 20 C.F.R.

§§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the

claimant has an impairment that meets or equals a listed impairment, then the

claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and

416.920(a)(4)(iii).

If the claimant's impairments do not meet or equal the severity of any

impairment described in the Listing of Impairments, however, then the ALJ must

proceed to step four and consider whether the claimant retains the residual

functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. §§

404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to

engage in past work, the burden shifts to the Commissioner at step five to establish

that the claimant can perform other work in the national economy. 20 C.F.R. §§

404.1520(a)(4)(v) and 416.920(4)(v).

## III.   **Discussion**

The ALJ found at step one that Plaintiff met the insured status requirements

of the Act through September 30, 2015. At step two, the ALJ found that Plaintiff's

bilateral shoulder derangement status-post surgical procedures and injections,

degenerative disc disease of the spine, asthma, peripheral neuropathy, obesity, left

ankle sprain with tarsal tunnel syndrome, and tibial tendonitis were severe

impairments. The ALJ concluded at step three that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. The ALJ further found that while Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, her statements regarding the severity of those symptoms were not entirely consistent with the medical and other evidence in the record. The ALJ concluded that Plaintiff had the residual functional capacity to perform a reduced range of light work. Based on that residual functional capacity assessment, the ALJ found at step four that Plaintiff could not perform any past relevant work as a census data collector or a secretary. But considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ concluded that Plaintiff could perform the requirements of representative occupations such as office helper, checker, or counter attendant. (Doc. 13 at 17-27.)

Plaintiff argues the ALJ's finding that she has the residual functional capacity to perform a reduced range of light work is not supported by substantial evidence, and raises four issues on appeal. First, Plaintiff maintains the ALJ did not provide legally sufficient reasons for rejecting the opinion of her treating physicians. Second, Plaintiff maintains the ALJ erred at step two by finding that her carpal tunnel syndrome and migraines were not severe impairments and omitting related limitations from the residual functional capacity assessment.

Third, Plaintiff contends the ALJ did not provide clear and convincing reasons for discounting her subjective symptom testimony. Finally, Plaintiff argues the ALJ did not provide germane reasons for discounting several lay witness statements.

### A.    Medical Opinions

Where there are conflicting medical opinions in the record, "the ALJ is charged with determining credibility and resolving the conflict." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2). An ALJ may reject the uncontradicted opinion of a treating or examining physician only for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To discount a controverted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record." *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012); *Lester*, 81 F.3d at 830. The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The opinions provided by Plaintiff's treating physicians are contradicted by the medical opinions of the state agency consultants. Thus, the

Court reviews the ALJ's decision to determine if it contains specific and legitimate reasons for rejecting the opinions of the treating physicians.

1.     Dr. Stayner

Plaintiff argues the ALJ erred by not giving more weight to medical records from Dr. Larry Stayner, an orthopedic surgeon who treated Plaintiff between October 2010 and March 2017 and performed four shoulder surgeries. Specifically, Plaintiff claims the ALJ failed to consider a December 2012 treatment recommendation stating that she was "maximally medically improved" with respect to her right shoulder and would have a "permanent restriction of no lifting more than 5 lb. below the waist, and no lifting at or above the shoulders." (Doc. 13, at 759). Plaintiff maintains the ALJ erred by ignoring Dr. Stayner's assessment and instead finding her capable of lifting up to 20 pounds occasionally and 10 pounds frequently as required in light work.

Plaintiff is correct, and the Commissioner agrees, that the ALJ did not specifically consider Dr. Stayner's December 2012 assessment of her lifting restrictions. According to the Commissioner, however, the ALJ's analysis is nevertheless sufficient because she noted that Dr. Stayner released Plaintiff to work in August 2013 without restrictions. (Doc. 19, at 9, citing Doc. 13, at 752). But this is not entirely accurate. When Dr. Stayner saw Plaintiff in August 2013,

she told him that she had been "fully released" and given a "10% impairment" rating by an independent medical examiner. (Doc. 13, at 752). While Dr. Stayner agreed that Plaintiff was doing better, and found she had full range of motion of her shoulder and good rotator cuff strength, he did not say anything about her lifting restrictions or ability to work.

The Commissioner further argues the ALJ's analysis was sufficient because she considered treatment records from Dr. Stayner after December 2012 showing that Plaintiff's condition had improved. For example, the ALJ cited records from Dr. Stayner indicating that Plaintiff had full had normal range of motion bilaterally in February 2012, a full range of motion of her right shoulder in June 2012 and March 2017, and a full range of motion of her left shoulder in August 2013 and May 2015. (Doc. 13, at 22-23 citing Doc. 1106-30; 1138-41). The ALJ also cited records from a March 2017 examination by Dr. Stayner reflecting that Plaintiff had full motor strength in all extremities, intact sensation and coordination, and normal deep tendon reflexes. (Doc. 13, at 22, citing Doc. 13. at 1138-41).

Although the ALJ never referred to Dr. Stayner by name, the fact that she cited medical records showing that Plaintiff had a full range of motion in her shoulders arguably makes any error on her part in failing to specifically consider his December 2012 assessment of Plaintiff's lifting restrictions harmless. But

because this case should be remanded for the reasons set forth below, the ALJ should directly address Dr. Stayner's December 2012 assessment on remand.

2.     Dr. Heath

Dr. Brett Heath was Plaintiff's treating primary care physician between March 2010 and September 2016. The ALJ discounted two opinions provided by Dr. Heath regarding Plaintiff's ability to work – a 2015 assessment and a 2016 medical source statement. Plaintiff argues the ALJ did not provide sufficiently specific and legitimate reasons for rejecting these opinions, and erred by instead crediting the state agency medical consultants' opinions that Plaintiff was capable of light work.

a.     *2015 Opinion*

In December 2015, Dr. Heath reported in his treatment notes that Plaintiff had "MULTIPLE medical conditions that would support a disability determination" and he could not see Plaintiff "in gainful employment in a meaningful way." (Doc. 13 at 1087) (emphasis in original). The ALJ afforded little weight to Dr. Heath's statement for two reasons. First, the ALJ cited the general principle that such opinions are not entitled to any special weight because the issue of disability is reserved to the Commissioner. (Doc. 13, at 25). See 20 C.F.R. 404.1527(d)(1). While it is true that the issue of disability is reserved to the

9

Commissioner, this is not by itself a reason for rejecting a treating physician's opinion. See e.g *Cartwright-Ladendorf v. Berryhill*, 2018 WL 4252132 *9 (S.D. Cal. Sept. 6, 2018) (citing *Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015)). See also *Holohan v. Massanari¸* 246 F.3d 1195, 1202-03 (9th Cir. 2001). Thus, even when citing this general principle, an ALJ must still provide specific, legitimate reasons for rejecting a treating physician's opinion that a claimant is disabled.

Second, the ALJ rejected Dr. Heath's December 2015 opinion that Plaintiff was unable to work because it was "entirely inconsistent" with his prior opinion as set forth in a January 2010 workers compensation assessment form. In January 2010, Dr. Heath anticipated that a bilateral shoulder injury Plaintiff suffered in November 2009 would reach maximum medical improvement in four to six months and she would not have any permanent impairment as a result of that injury. (Doc. 13, at 718). The ALJ found that Dr. Heath's January 2010 assessment was not consistent with his December 2015 opinion, but in doing so failed to consider several intervening events and medical records. To begin with, Dr. Heath made his January 2010 assessment four months before Plaintiff's alleged disability onset date of May 5, 2010 – when she injured her back, leg, elbow, and head in a car accident. (Doc. 13, at 652). In addition, Plaintiff underwent four shoulder

surgeries and carpal tunnel surgeries on each wrist during the period between Dr.
Heath's two reports. (Doc. 13, at 798-806; 1057-1058). Because these records
undermine the ALJ's reasoning, the Court finds the ALJ did not provide specific
and legitimate reasons for rejecting Dr. Heath's opinion.

The Commissioner argues any error on the ALJ's part in failing to provide
greater rationale for rejecting Dr. Heath's opinion is harmless because the opinion
did not contain any specific limitations. But the fact that Dr. Heath did not include
any specific limitations in his opinion that Plaintiff would be unable to work in any
meaningful way as a result of her impairments does not mean the ALJ could reject
that opinion without providing specific and legitimate reasons for doing so. Dr.
Heath rendered his opinion based on his longtime treatment of Plaintiff and the
objective medical evidence as set forth in his treatment notes. (Doc. 13, at 637-
658; 1076-1087). Dr. Heath's December 2015 opinion that Plaintiff would be
unable to work in any meaningful way is not "inconsequential to the ultimate
nondisability determination," and the ALJ's failure to provide legally sufficient
reasons to reject it was not harmless error. *Stout v. Commissioner*, 454 F.3d 1050,
1055 (9th Cir. 2006) (defining harmless error). See also *Hill v. Astrue*, 698 F.3d
1153, 1160 (9th Cir. 2012) (rejecting Commissioner's argument that ALJ's failure
to consider examining physician's opinion that claimant would likely not be

11

capable of working was harmless error).

   b.   *2016 Opinion*

In September 2016, Dr. Heath completed a Medical Source Statement assessing Plaintiff's functional abilities. (Doc. 13 at 892-97.) Dr. Heath found that Plaintiff can never lift and carry 11 pounds or more; occasionally lift and carry up to ten pounds; sit for one hour without interruption and a total of two hours in an eight hour day; stand for 30 minutes and walk for 45 minutes without interruption; and stand and walk for a total of one hour each in an eight hour day. Dr. Heath further stated that Plaintiff can never reach overhead, and only occasionally reach, handle, finger, feel, push/pull, and operate foot controls. (Doc. 13, at 894-97).

The ALJ gave Dr. Heath's opinion little weight "because the evidence of record contains little objective support for this overstatement." (Doc. 13, at 25). The ALJ's general statement that there was "little objective support" for Dr. Heath's opinion is not, by itself, a sufficiently specific and legitimate reason for discounting a treating physician's opinion. See e.g. *Lizarraga v. Berryhill*, 2018 WL 827895 *5 (N.D. Cal. Feb. 12, 2018). As Dr. Heath explained, his opinion was based on the results of several MRIs, functional work testing, and the fact that Plaintiff was having extreme pain and numbness in her shoulders, neck, and low back. (Doc. 13, at 893). Consistent with Dr. Heath's opinion, the record contains

the results of several MRIs – including one ordered by Dr. Heath in 2011 which showed significant stenosis and prompted him to refer Plaintiff to a neurosurgeon. (Doc. 13, at 650-51). More recent MRIs ordered by different health care providers showed varying degrees of degenerative changes and other abnormalities. (See e.g. Doc. 13, at 746-750; 849-854). Dr. Heath's records further reflect Plaintiff consistently complained of neck, shoulder, and back pain, for which he referred her for physical therapy and to orthopedic surgeon Dr. Stayner. Particularly on this record, the ALJ's general statement that Dr. Heath's opinion was not supported by the objective evidence is not, by itself, a sufficiently specific and legitimate reason for discounting that opinion in its entirety.

The ALJ followed up this general statement with two more specific statements. First, the ALJ found there was "no evidence of continuous weakness in handling, fingering, feeling or use of foot controls" that would support the manipulative limitations identified by Dr. Heath. (Doc. 13, at 25). The ALJ addressed the evidence documenting Plaintiff's treatment for bilateral carpal tunnel syndrome at step two. (Doc. 13, at 20). The ALJ recognized that Plaintiff had been treated periodically for pain, numbness, and tingling in her hands, but found her carpal tunnel syndrome was not a severe impairment because those symptoms resolved with treatment. For support, the ALJ cited medical records showing that

steroidal injections in October 2016 provided three weeks of complete relief, and her symptoms were completely resolved following carpal tunnel release surgery in December 2016. (Doc. 13, at 20, citing Doc. 13, at 1045-58). When Dr. Heath completed his medical source statement in September 2016, however, a CT scan showed "severe" carpal tunnel syndrome, and he noted that Plaintiff was experiencing constant numbness and tingling. (Doc. 13, at 1074). Thus, as of September 2016, Dr. Heath's opinion regarding Plaintiff's manipulative limitations was supported by substantial evidence. Nevertheless, because subsequent evidence showed that Plaintiff's symptoms improved with treatment, the ALJ legitimately found that Plaintiff's carpal tunnel syndrome was not a severe impairment and did not adopt the manipulative limitations set forth in Dr. Heath's September 2016 opinion into the residual functional capacity assessment.

Second, the ALJ found that Dr. Heath's opinion was not consistent with Plaintiff's "own reports of standing up to three hours, traveling out of town and doing a lot of driving." (Doc. 13, at 25). For support, the ALJ cites to two exhibits consisting of nearly two hundred pages of medical and physical therapy records without identifying any specific reports by Plaintiff. Presumably, the report of Plaintiff standing for three hours comes from a December 4, 2015 physical therapy note stating that Plaintiff reported that her back hurt after "helping a friend with a

computer and standing for 3 hours." (Doc. 13, at 956). The records cited by the ALJ do not appear to contain any references to Plaintiff traveling, and references to her driving for significant periods also mention that she experienced pain as a result. (Doc. 13, at 583, 1009). These isolated references do not provide a sufficiently specific and legitimate basis for rejecting Dr. Heath's opinion.

But even assuming this was a sufficiently specific and legitimate reason for rejecting Dr. Heath's assessment of Plaintiff's sitting and standing limitations, the ALJ provided no reasons for discounting the lifting and carrying limitations he identified. Dr. Heath limited Plaintiff to occasionally lifting and carrying up to ten pounds and never lifting and carrying 11 pounds or more. These limitations are not consistent with the ability to perform light work, which requires lifting up to ten pounds frequently and up to 20 pounds occasionally. Because the disability determination may have been different had Dr. Heath's limitations been included in the residual functional capacity, the ALJ's failure to provide sufficiently specific and legitimate reasons for rejecting Dr. Heath's opinion is not harmless error.

Instead of crediting Dr. Heath's opinion, the ALJ relied on the opinions of state agency consulting physicians Dr. William Fernandez and Dr. Rafael Olivares, who reviewed Plaintiff's records on November 10, 2015, and March 3, 2016, respectively. (Doc. 13, at 115, 129). Because the state agency physicians reached

15

their opinion without having reviewed Dr. Heath's more recent treatment notes and his 2016 medical source statement, their assessment of Plaintiff's physical limitations was not based on all of the relevant evidence and are not substantial evidence for the ALJ's residual functional capacity finding.

### B.    Subjective Symptom Testimony

Plaintiff argues the ALJ did not provide sufficiently clear and convincing reasons for discrediting her subjective symptom testimony. The Court agrees.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). At the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (internal quotation marks and citations omitted). Where, as here, the ALJ finds the claimant has met this evidentiary threshold and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d 493 (*quoting Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

In addition, the court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 492. This means the court "may not take a general finding" by the ALJ "and comb the administrative record to find specific" evidence in support of that finding. *Brown-Hunter*, 806 F.3d at 494. Rather, the ALJ is responsible for identifying the testimony she finds not credible, and linking that testimony to the particular parts of the record supporting her determination. *Brown-Hunter*, 806 F.3d at 494.

Here, the ALJ briefly summarized Plaintiff's testimony and then identified two reasons for discounting the alleged severity of her symptoms. First, she found Plaintiff's "reported activities of daily living are not as limiting as one would expect from an individual alleging complete disability." (Doc. 23, at 22). An ALJ

17

may discount subjective symptom testimony based on evidence of a claimant's daily activities on two grounds: the stated activities contradict the claimant's other testimony, or they meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ noted that Plaintiff reported she is able to handle her personal care, prepare meals, do laundry, drive, care for her daughter and pets, and go shopping twice a month. (Doc. 13, at 22, 245-52). But the ALJ did not explain how these reported activities contradicted Plaintiff's testimony. Nor did she find that Plaintiff's reported activities somehow meet the threshold for transferable work skills.

The only other reason provided by the ALJ for discounting Plaintiff's testimony was that "the treatment record, objective imaging and clinical observations in the record do not entirely support the claimant's subjective complaints." (Doc. 13, at 22). While the ALJ may consider whether a claimant's subjective testimony is consistent with the medical evidence, the ALJ may not "reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by the objective medical evidence." *Lingenfelter*, 504 F.3d at 1040 n. 3. The ALJ provided a lengthy summary of the medical evidence, and found that Plaintiff's subjective allegations were not entirely supported by the objective findings.

18

While the ALJ permissibly considered whether the objective medical evidence supported Plaintiff's allegations, that alone was not enough to discount her symptom testimony. The only other reason provided by the ALJ was not clear and convincing. Because the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective allegations, this case should be remanded. *See Brown-Hunter*, 806 F.3d at 492 (explaining that if an ALJ fails to specify reasons for finding claimant testimony not credible, the "error will usually not be harmless").

### C.    Lay Witnesses

Plaintiff argues the ALJ did not provide germane reasons for discounting several written statements provided by her family, friends, acquaintances, and a former supervisor. (Doc. 13, at 311-24). It is well-established in the Ninth Circuit that the "ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 2003); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)). "If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Stout*, 454 F.2d at 1053 (quoting *Dodrill*, 12 F.3d at 919).

The ALJ discussed the written statements collectively and gave them little weight because the lay witnesses who wrote them were not medically trained to make observations as to the frequency and intensity of Plaintiff's symptoms. (Doc. 13, at 25). But the fact that a lay witness is not a medical expert does not disqualify the witness from making observations related to the claimant's limitations and activities. See e.g. *Catron v. Colvin*, 2013 WL 3884030 *6 (E.D. Wash. July 26, 2013) (citing *Regennitter v. Commissioner of Social Sec. Admin.,* 166 F.3d 1294, 1298 (9th Cir. 1999)).

The ALJ further found that while the lay witness statements provided a window into Plaintiff's "personality and characteristics over time," they were not consistent with Plaintiff's activities and the objective medical evidence. (Doc. 13, at 25). This boilerplate statement is not supported by any further explanation. If, on remand, the ALJ discounts lay witness testimony, she should provide sufficiently specific reasoning to allow for meaningful review.

### D.    Severe Impairments

Plaintiff contends the ALJ erred at step two because she should have included carpal tunnel syndrome and migraine headaches as severe impairments. An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.921. An impairment may be considered non-

severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. *See* SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

As discussed above, the ALJ's finding that Plaintiff's carpal tunnel syndrome was not a severe impairment is supported by substantial evidence. The ALJ's finding that Plaintiff's migraine headaches were not a severe impairment is also supported by substantial evidence, including the fact that a brain MRI in early 2017 was unremarkable, her treating doctor did not recommend prophylactic medication, and during her most recent medical visit Plaintiff stated that she had not had a headache for approximately one month. (Doc. 13, at 20, citing Doc. 13 at 1133.

### E.    Remand

In light of the errors set forth above, this Court has discretion to remand for further administrative proceedings or an award of benefits. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Remand for an award of benefits is appropriate only in "rare circumstances," when certain conditions are met. *Treichler v. Comm'r of Soc. Sec. Admin*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). Remand for an award of benefits is appropriate only where (1) the ALJ has not provided legally sufficient reasons for rejecting evidence, such as the claimant's testimony or a

medical opinion; and (2) the record has been fully developed and there are no outstanding issues on which further administrative proceedings would be useful. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). If these two conditions are satisfied, the court credits the discredited evidence "as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 775 F.3d at 1101). Even if the first two conditions are satisfied and the court credits the evidence as true, "it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045. Remand for an award of benefits is proper only if there is no serious doubt as to disability.

On this record, the Court finds it is not clear whether Plaintiff is in fact disabled and remand for further administrative proceedings is the proper remedy. Because the ALJ did not provide clear and convincing reasons for discounting Plaintiff's symptom testimony and there are outstanding issues that must be resolved before a proper disability determination can be made, including further consideration of the medical opinions discussed above, this case should be remanded further proceedings.

## IV.   <u>Conclusion</u>

For the reasons set forth above,

IT IS RECOMMENDED that the Commissioner's decision be reversed and this matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 16th day of October, 2018.

_____
Jeremiah C. Lynch
United States Magistrate Judge